IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANEE OLIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.     21 CV 6001 |
| | ) | |
| CITY OF CHICAGO, OFFICER | ) | Judge: John F. Kness |
| JEREMIAH FORSELL #2921, OFFICER | ) | |
| DAVID IVANOV #6667, and OFFICER | ) | Magistrate Judge: Jeffrey Cole |
| RICKEY #12201, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' <u>JOINT MOTION TO DISMISS THE COMPLAINT</u>**

Plaintiff DANEE OLIVA, by his attorneys, Seidman Margulis & Fairman, LLP, for his Response to Defendants' Joint Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

I. **INTRODUCTION**

This case arises out of an ongoing pattern of evidence manipulation and falsification by Chicago police officers as part of a series of baseless prosecutions against the Plaintiff. John Crispino, Plaintiff's roommate, lent out his vehicle on a car sharing app; the vehicle was used as part of a drug deal arranged with undercover police officers. The police officers allowed the drug dealer to leave without arresting him. Instead, they returned to the police station, ran the plates, identified the vehicle's owner, and looked up his roommate, allowing Defendant Jeremiah Forsell—who was soon after asked to identify the dealer in a photo line-up—to observe all of this in violation of Illinois law. The substances obtained in the deal were sent to a lab and identified to Defendants as not containing any controlled substances whatsoever. Defendants conducted no further investigation, instead choosing to produce a series of sworn criminal Complaints charging Plaintiff with knowingly manufacturing and/or delivering a controlled substance. Plaintiff was arrested and locked up on

October 8, 2019, then released under $25,000 bond. The charges were dismissed under a *nolle prosequi* for lack of probable cause. Defendants then pursued charges for delivery of a look-alike substance, with Defendant David Ivanov giving testimony to a grand jury on December 27, 2019. These new charges, too, were dismissed under a *nolle prosequi* for lack of probable cause, but not until November 13, 2020.

On November 9, 2021, Plaintiff filed an eight-count Complaint against Defendants alleging violation of due process, conspiracy, failure to intervene, *Monell* violation, malicious prosecution, intentional infliction of emotional distress, respondeat superior, and indemnification. On March 1, 2022, Defendants jointly moved to dismiss all counts, arguing that Plaintiff has no due process right to be free of evidence falsification by the police prior to trial; that the statute of limitations for any false arrest claim has passed; that the conspiracy and *Monell* counts cannot lie because there is no underlying constitutional violation; that the malicious prosecution count is time-barred and insufficiently pled; that the claim for intentional infliction of emotional distress is time barred; and that claims for respondeat superior and indemnification dependent upon the viability of the preceding counts. For the following reasons, this Court should deny Defendants' motion.

## II. STATEMENT OF FACTS

1. At all relevant times, Plaintiff resided in Cook County, Illinois. (Complaint[1] ¶ 1.)

2. At all relevant times, Plaintiff lived with a roommate named John Crispino. (Complaint Count ¶ 5.)

3. At all relevant times, Defendant Officers were part of or working with the Chicago Police Department's Narcotics Division Squad D-7. (Complaint Count ¶ 14.)

4. During the approximately one-month period prior to November 28, 2018, Defendant Officer Jeremiah Forsell made contact with an individual identifying himself as "Mikey" through an app named "High There" and arranged for the purchase of LSD.

5. At some time prior to November 28, 2018, Crispino had listed his Toyota RAV-4 on a

---

[1] A true and correct copy of Plaintiff 's complaint is attached hereto as Exhibit A.

car sharing app called Getaround. (Complaint ¶ 6.)

6. Prior to and on November 28, 2018, an individual named Mike K. rented Crispino's vehicle through Getaround. (Complaint ¶ 8-9.)

7. At 4:30 PM on November 28, 2018, Mike K. picked up Crispino's RAV-4. (Complaint ¶ 9.)

8. From 10:00 AM to 6:06 PM on November 28, 2018, Plaintiff was at work. (Complaint ¶ 10.)

9. At 8:12 PM on November 28, 2018, Defendant Officer Jeremiah Forsell met with Mikey in Crispino's Toyota RAV-4, where he exchanged $100 for ten paper stamps. (Complaint ¶¶ 22-23.)

10. In the meantime, Plaintiff was at a movie theater in Rosemont continuously from 6:40 PM to 8:54 PM on November 28, 2018, watching a movie with a friend. (Complaint ¶¶ 11-13.)

11. Mikey was wearing a black jacket, jeans, glasses and a hat; his face could not be identified on surveillance footage, although he appeared to have light complexion. (Complaint ¶¶ 22, 27.)

12. Defendant Forsell made no attempt to apprehend "Mikey"; he instead returned to his squad car, radioed the department to report a positive narcotics transaction, and returned to the police station while Mikey was allowed to drive away unimpeded. Mikey was never stopped, nor was he ever arrested. (Complaint ¶¶ 25-33.)

13. Back at the department, Defendant Officer Ivanov then conducted a LEADS search on the license plate of the Toyota RAV-4 with Defendant Forsell present. The search returned a picture of Crispino and his address as the registered owner of the vehicle; Forsell told Ivanov that Crispino was not "Mikey." (Complaint ¶¶ 34-36.)

14. Ivanov searched for Crispino's address in the Accurint database, which returned Plaintiff as a second individual residing at Crispino's address; with Defendant Forsell still present, Ivanov took Plaintiff's identifying information and ran a second LEADS search, retrieving Plaintiff's driver's license photo. (Complaint ¶¶ 37-39, 45.)

15. Defendants did not ever question Crispino, Plaintiff, or Mike K., nor did they perform any investigation whatsoever regarding the cell phone number Mikey had used in his communications with Forsell throughout the prior month. (Complaint ¶¶ 50-53.)

16. On November 28, 2018, Defendant Officers Forsell and Rickey signed a sworn criminal complaint charging Plaintiff with possession and delivery of a controlled substance. (Complaint ¶¶ 54-55.)

17. 725 ILCS 5/107A-2(f) mandates that one identifying a suspect in a lineup must not receive information beforehand that could influence their identification. (Complaint ¶ 44.)

18. On the following day, Forsell was presented with a line-up of six photographs,

excluding Crispino but including the photograph that Forsell had already seen from Plaintiff's driver's license during Ivanov's LEADS search the day prior. As a result of Forsell's prior familiarity with Plaintiff's photograph, Forsell identified Plaintiff as "Mikey." (Complaint ¶¶ 40-42, 45-46.)

19. The paper stamps and enclosing packaging that Forsell had purchased from Mikey were sent to an Illinois State Police forensics lab for analysis. (Complaint ¶ 47.)

20. On March 11, 2019, the Illinois State Police forensics lab finally returned its testing results to Defendant Forsell: the stamps he had purchased from Mikey on November 28, 2018 contained no controlled substances whatsoever. (Complaint ¶¶ 48-49.)

21. On October 8, 2019, Defendant Ivanov arrested Plaintiff at his home despite the fact that there was clearly no probable cause for possession or delivery of a controlled substance. (Complaint ¶¶ 61-62.)

22. Plaintiff remained in jail until the following day, when he was released on a $25,000.00 I-bond. (Complaint ¶ 63.)

23. On December 6, 2019, the Cook County State's Attorney requested a *nolle prosequit* due to lack of probable cause; the case was then dismissed. (Complaint ¶ 64.)

24. Rather than letting the matter drop, Defendants sought to amend the criminal Complaint and sought to indict Plaintiff with delivery of a look-alike substance. (Complaint ¶ 65.)

25. On December 27, 2019, Defendant Ivanov gave testimony before a Grand Jury which returned a true bill for delivery of a look-alike substance. This caused Plaintiff to re-appear in court to be arraigned on the new charge of delivery of a look-alike substance, whereupon a new bond was set by the court. (Complaint ¶ 66.)

26. On November 13, 2020, the Cook County State's Attorney again requested a *nolle prosequit* due to lack of probable cause and the case was again dismissed. (Complaint ¶ 67.)

III. **STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2D 868 (2009). Courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). "Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim

even though there is a defense to that claim." *Id.*

IV. **ARGUMENT**

1. **Defendants violated Plaintiff's right to due process because Defendants framed Plaintiff for a crime, thereby preventing him from traveling out of state and harming his liberty interest in interstate travel.**

Defendants mischaracterize Plaintiff's due process claim as one factually grounded in his pretrial detention of October 8, 2019 to October 9, 2019; on this basis, Defendants argue that Plaintiff's due process claim is in fact a claim under the Fourth Amendment. However, Defendants' argument is baseless. The Complaint does not merely allege false arrest; it alleges that Defendants engaged in a conspiracy to prosecute Plaintiff for a crime without probable cause, breaking state law governing the procedure for conducting line-ups, ignoring the results of a clearly exculpatory laboratory test, committing perjury on sworn complaints, and deliberately ignoring obvious lines of inquiry that would have informed them beyond all doubt that Plaintiff was not "Mikey." This course of conduct did not merely result in Plaintiff's pretrial detention: it prevented him from exercising his liberty interest in out-of-state travel for more than a year.

These facts meet all the elements for a claim under procedural due process. To state a claim for violation of due process, a plaintiff must allege (1) that he had a cognizable liberty interest under the Fourteenth Amendment; (2) that he was deprived of that liberty interest; (3) and that the deprivation was without due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Starting with the third element, Plaintiff has alleged an ongoing series of due process violations arising out of the Defendants' conduct. The 7th Circuit Court of Appeals has held that prior to trial, police officers have a duty sounding in due process to refrain from fabricating evidence or framing individuals for crimes they did not commit:

> [A] prosecutor violates due process when she knowingly uses perjured testimony to secure a conviction. The question before us is whether that principle also covers the predicate step of creating the false testimony. In *Napue*, the Court condemned

> something even more innocuous—a prosecutor's failure to correct a witness—while pointing out that it was not as bad as affirmatively "soliciting false evidence." 360 U.S. at 269, 79 S.Ct. 1173. It is hard to see how the more egregious step of crafting false evidence is any less of a violation. That creation, whether by police officers or by a prosecutor acting in an investigatory capacity, would not happen unless the investigatory personnel intended to serve it up to the prosecutor for use at trial—which, we note, is exactly what happened here. As the First Circuit has put it, "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process (indeed, we are unsure what due process entails if not protection against deliberate framing under color of official sanction)."

*Whitlock v. Brueggemann*, 682 F.3d 567, 581–82 (7th Cir. 2012)*(citing Limone v. Condon*, 372 F.3d 39, 44–45 (1st Cir. 2004)). The same is true of police investigators who ignore exculpatory evidence prior to trial: in such instances, they violate the accused's right to due process. *Steidl v. Fermon*, 494 F.3d 623, 626 (7th Cir. 2007).

As Defendants correctly observe, there was no trial in this case: Defendants' campaign of harassment was twice derailed by well-deserved *nolles prosequit*. However, this does not mean that Plaintiff was not deprived of a cognizable liberty interest. The Supreme Court has time and again ruled that the right to travel is a core constitutional right:

> In Anglo-Saxon law that right was emerging at least as early as the Magna Carta. Chafee, Three Human Rights in the Constitution of 1787 (1956), 171—181, 187 et seq., shows how deeply engrained in our history this freedom of movement is. Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values.

*Kent v. Dulles*, 357 U.S. 116, 125-26, 78 S. Ct. 1113, 1118, 2 L. Ed. 2D 1204 (1958). The right to travel does not just protect citizens' rights to travel abroad, but also "protects the right of a citizen of one State to enter and to leave another State." *Saenz v. Roe*, 526 U.S. 489, 500, 119 S. Ct. 1518, 1525, 143 L. Ed. 2D 689 (1999). Not only is the right to travel between states basic, important, and virtually unconditional, that right is also a liberty interest guaranteed by the due process clause. *Id.*; *Kent*, 357 U.S. at 125 ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived

without the due process of law.")

Finally, Defendants' misconduct deprived Plaintiff of this liberty interest. Due to the baseless charges against him, Plaintiff was twice placed under conditions restricting his freedom of travel, preventing him from leaving the state of Illinois by the terms of his release on bond: once from October 9, 2019 to December 6, 2019, and again from December 27, 2019 until November 13, 2020. (Complaint ¶¶ 63, 66.) Based on the above, the Complaint competently alleges facts showing that Defendants' persistent, malicious attempts to frame Plaintiff for a crime he did not commit deprived Plaintiff of his liberty interest in free travel without due process of law. This neatly covers all of the elements required to plead a due process claim. Defendants' Motion to Dismiss should be denied.

Defendants next argue that Plaintiff's due process claim is time barred, but Defendants again base their argument on the false premise that Plaintiff's due process claim is nothing but a claim for false arrest. As discussed above, this is incorrect: Plaintiff's claims revolve around the police's continuous push for prosecution without probable cause through false statements and perversion of the investigatory process.

The 7th Circuit has held that due process claims contesting the fairness of one's prosecution are similar to malicious prosecution claims, and "claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The first *nolle prosequi* in this case occurred on December 6, 2019, less than two years before Plaintiff filed the Complaint; the second *nolle prosequi* occurred on November 13, 2020, less than one year before filing the Complaint. (Complaint ¶¶ 64, 67.) Section 1983 claims borrow their statute of limitations periods from the state where they are raised. *See* 42 USC §1988(a). The statute of limitations for malicious prosecution claims in Illinois is two years. 735 ILCS 5/13-202. Therefore, regardless of the *nolle prosequi* date used, Plaintiff filed within the statutory period. As such, these claims are not time-barred as a matter of law. Defendants' Motion to Dismiss should be denied.

In making this argument, Plaintiff acknowledges that the bonds referenced in Complaint ¶¶ 63

and 66 are not themselves attached to the Complaint; Plaintiff hereby attaches a true and correct copy of each such bond to this Response as Exhibit B. In the event that this Court finds the absence of the bonds from the Complaint fatal to the due process claim above, Plaintiff asks this Court for leave to amend the Complaint to incorporate said documents.

In the alternative: in the course of researching this response, Plaintiff has become aware of an additional theory of liability that may lie under the Equal Protection Clause. Therefore, in the event that this Court chooses not to deny Defendants' motion, Plaintiff requests that the Court grant leave for Plaintiff to amend the Complaint to add said theory as an additional count.

2. **Claims for conspiracy and failure to intervene are based upon an adequately pled, underlying constitutional violation.**

Defendants next argue that Counts II and III of the Complaint, alleging conspiracy and failure to intervene, respectively, should be dismissed for lack of an underlying constitutional claim. This is simply a rehash of Defendants' argument with respect to Count I. As discussed in Section IV-1 above, Plaintiff has pled a valid claim for violation of his due process rights under the 14th Amendment. Therefore, this argument is without merit. Defendants' Motion to Dismiss should be denied.

3. **Plaintiff's claim for a *Monell* violation rests upon Plaintiff's timely and adequately pled claim for violation of his due process rights.**

Defendants next argue that Count IV of the Complaint, too, should be dismissed for lack of an underlying constitutional claim. As discussed in Section IV-1, *supra*, Plaintiff has adequately pled a claim for violation of his procedural due process rights. Further, it must be noted that Defendants rely upon an unreported trial court memorandum opinion and order as their sole point of authority here. *See Jones v. Burge*, No. 11-CV-4143, 2013 WL 5274335 (N.D. Ill. Sept. 17, 2013). Such opinions are non-precedential in federal court, and do not constitute binding authority.

Defendants next rely upon that same non-precedential case for the proposition that Plaintiff's *Monell* claim shares the same statute of limitations as Plaintiff's underlying due process claim. Even if, *arguendo*, Defendant's citation constituted sufficient authority to establish such a proposition, it still

would not provide a legal basis for finding the *Monell* claim time-barred. As discussed in Section IV-1, Plaintiff's due process claim resembles a malicious prosecution claim; this means that it accrued when the underlying cases were disposed of favorably. *See Brooks*, 578 F.3d at 579. They were disposed of favorably less than two years prior to the filing of the Complaint. (Complaint ¶¶ 64, 67.) If Plaintiff's *Monell* claim is based upon the same statute of limitations rules as the underlying due process claim, then it follows that Plaintiff's *Monell* claim is necessarily timely, too.

Finally, Defendants argue that the *Monell* claim should be dismissed because it does not contain evidence of a widespread practice. Defendants cite *City of Oklahoma City v. Tuttle* for the proposition that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary" to allege a *Monell* violation. 471 U.S. 808, 824, 105 S. Ct. 2427, 2436, 85 L. Ed. 2D 791 (1985). In citing this portion of the case, Defendants appear to argue that the policy alleged in Count IV of the Complaint is not unconstitutional. The Complaint alleges a policy of systematically framing citizens for crimes regardless of their guilt or innocence. That Defendants would suggest such a policy is "not itself unconstitutional" is nothing short of jaw-dropping. When the 7th Circuit adopted the language "we are unsure what due process entails if not protection against deliberate framing under color of official sanction," the court was not merely being hyperbolic. A policy such as this would strike right at the heart of procedural due process—and would therefore necessarily be itself unconstitutional.

If anything, *City of Oklahoma City v. Tuttle* suggests that a single incident is enough in a case like this. Noting that the policy alleged in *Monell* "itself violated the constitutional rights of pregnant employees," the Supreme Court went on to state: "Obviously, it requires only one application of a policy such as this to satisfy fully *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy." 471 U.S. at 822. The Complaint alleges a pattern and practice throughout the Chicago Police Department, known to CPD commanders and to the City of Chicago, yet permitted to continue as *de facto* policy. (Complaint

Count IV, ¶¶ 95, 97-99.) Defendants' Motion to Dismiss should be denied.

4. **Plaintiff's first claim for malicious prosecution under state law is timely, and its second such claim is adequately pled.**

Defendants assert that a state law claim for malicious prosecution accrues when the underlying criminal proceeding terminates in the accused's favor; this is, in principle, correct. A *nolle prosequi* typically constitutes such a favorable termination, particularly where the circumstances surrounding it compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution. *Swick v. Liautaud*, 169 Ill. 2d 504, 513, 662 N.E.2d 1238, 1242–43 (1996). However, in this case, Plaintiff has pled that immediately following the first *nolle prosequi*, Defendants did not file a new complaint: they amended the *original criminal complaint* and had Plaintiff indicted on the exact same set of grossly deficient, probable-cause-lacking facts as before. (Complaint ¶ 66.) Thanks to Defendants' continued course of misconduct, the first criminal proceeding did not truly end; it merely morphed into a second criminal proceeding. Criminal proceedings against the Plaintiff only truly ended with the second *nolle prosequit* on November 13, 2020.

Moreover, *arguendo*, even if the continuous campaign to prosecute Plaintiff could be deemed divisible in any meaningful sense, Defendants would still fail to carry their burden of proving that claims concerning the first case are time-barred. The statute of limitations for malicious prosecution claims is set forth in 735 ILCS 5/13-202, providing two years from the date the cause of action accrued. Defendants assert that the Tort Immunity Act imposes a one-year statute of limitations on state malicious prosecution claims, and yet they cite no authority whatsoever in support of this claim: not the Act, not case law, not even a law review article. Arguments unsupported by authority are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). As such, this Court should deem the argument waived.

With respect to the so-called second claim for malicious prosecution, Defendants argue that

Plaintiff has not pled a lack of probable cause. This assertion is flatly contradicted by paragraph 67 of the Complaint, which reads:

> On November 13, 2020, the Cook County State's Attorney requested that the court enter a *nolle prosequit* on the charges of delivery of a look alike substance due to the aforementioned lack of probable cause for prosecuting Plaintiff and the case was dismissed.

(Complaint ¶ 67.) This paragraph clearly incorporates the many paragraphs littered throughout the Complaint setting forth Defendants' underlying lack of probable cause. Although Defendants claim that these facts are pled "only" for the first charge, in reality these facts underlie both criminal charges, as both charges were levied for the exact same occurrence. The only difference between the two sets of charges was that the second set finally took account of the lab results Defendants received half a year earlier proving that the paper stamps Defendant Forsell purchased did not contain a controlled substance. Nothing else had changed: Defendants still had not followed incredibly obvious leads that should have reasonably led them to investigate Mike K.; they still had not questioned any of the relevant figures; they still had no usable surveillance footage; they had still done no work to discover or verify Plaintiff's alibi; and they were still relying exclusively on a line-up which did not include the likely perpetrator, one where the eyewitness had been illegally biased in a fashion that rendered his identification fundamentally unreliable. In citing "the aforementioned lack of probable cause," paragraph 67 of the Complaint incorporates all of this and more.

Defendants assert that the second set of charges were brought "under a new case name and case number." However, in support of this, Defendants cite to paragraphs of the Complaint which say nothing of the sort. The Complaint alleges that the original charges were dismissed and that Defendants sought to amend the original criminal complaint. (Complaint ¶ 65.) On a Rule 12(b)(6) motion to dismiss, facts alleged in the Complaint must be treated as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2D 868 (2009). Furthermore, even if the second set of charges did occasion a new case number and caption, this would not in any way demonstrate that the

evidentiary deficiencies attending the first set of charges had been magically cured during the interim. By bringing in outside facts in this way, Defendants are effectively asking this Court to make an evidentiary ruling on a Motion to Dismiss; this Court should decline to do so. Defendants' Motion to Dismiss should be denied.

Defendants next assert that they did not play a key role in causing the prosecution. However, Defendants' arguments here are wholly unsupported by citation to relevant legal authority, and should therefore be deemed waived. Just as importantly, these arguments simply do not accord with Illinois law. In *Beaman v. Freesmeyer*, the Illinois Supreme Court discussed what it means for a police officer to commence or continue a prosecution. Significantly, it does not matter at all that a policeman does not wield prosecutorial power or engage in active deception: "a person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 43, 131 N.E.3d 488, 499 (2019). Instead, the actual standard employed by Illinois courts reads as follows:

> "Liability thus depends on whether the defendant was actively instrumental in causing the prosecution, and the **presumption of prosecutorial independence can be overcome by showing that the defendant** improperly exerted pressure on the prosecutor, **knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution.**" 52 Am. Jur. 2d *Malicious Prosecution* § 88 (2018). Police officers may be subject to liability for malicious prosecution "[i]f they initiate a criminal proceeding by presentation of false statements, or by withholding exculpatory information from the prosecutor." 3 Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, The Law of Torts § 587, at 392 (2d ed. 2011) (cited here as Law of Torts).

*Beaman*, 131 N.E.3d at 499 (emphasis added). The exculpatory lab test was but one fact among many demonstrating wrongful conduct and the provision of misinformation to the prosecution, summarized above and in the Statement of Facts. In pretending to be ignorant of these plainly stated facts, Defendants engage in yet another bad-faith attempt to dodge accountability for their actions. The Court should deny Defendants' Motion to Dismiss.

5. **Plaintiff's claim for intentional infliction of emotional distress is timely.**

Defendants next rely on *Bridewell v. Eberle* for the proposition that a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest. 730 F.3d 672, 678 (7th Cir. 2013). However, in *Bridewell*, the plaintiff's IIED claim centered upon her arrest. There were no subsequent tortious acts by the police, only inaction as the prosecution progressed without them. *See id.* (plaintiff "insists that her claim accrued anew every day the detectives did not tell the prosecutors to dismiss the indictment"). This renders *Bridewell* factually distinct from the instant case. In the case at bar, Plaintiff's IIED claim does not hinge around his arrest at all: it hinges around a continuing sequence of unlawful acts and conduct.

Although a limitations period generally begins to run when facts exist that authorize one party to maintain an action against another, it is the law in Illinois that "under the 'continuing tort' or 'continuing violation' rule, 'where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.'" *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003)(internal citations omitted). A continuing violation or tort is occasioned by continuing unlawful acts and conduct, as opposed to a single overt act. *Id.*

In this case, unlike *Bridewell*, Defendants embarked on a course of tortious conduct spanning more than a year. The last act in Defendants' course of tortious conduct occurred on December 27, 2019 when Defendant Ivanov gave testimony before a Grand Jury to secure prosecution for delivery of a look-alike substance. (Complaint ¶ 66.) Plaintiff filed the Complaint on November 9, 2021, less than two years later. Accordingly, Plaintiff's state law tort claims are not time-barred either. Although Defendants once again assert a statutory period of one year, they again fail to cite even a single authority in support. Just as before, this Court should deem the contention waived. *See Berkowitz*, 927 F.2d at 1384.

6. **Plaintiff's claims for respondeat superior and indemnification are valid.**

In a one-sentence argument, Defendants assert that Plaintiff's claims for respondeat superior and indemnification cannot lie because "all Plaintiff's claims fail." For this proposition, Defendants cite only to an unpublished slip decision from a district court; as before, this is not precedential authority. The Court should deem this unsupported, perfunctory quasi-argument waived. Moreover, for reasons already amply discussed in the sub-sections above, the premise behind this assertion is itself flatly incorrect.

Aside from the above, Defendants only contest Plaintiff's respondeat superior claims insofar as they pertain to claims under 42 US Code § 1983. However, the bulk of Plaintiff's claims are not made pursuant to 42 US Code § 1983; therefore, this argument does not and cannot justify dismissing Count VII of the Complaint.

## V. **CONCLUSION**

WHEREFORE, Plaintiff Danee Oliva respectfully requests that this Honorable Court enter an order denying Defendants' Joint Motion to Dismiss and granting any other relief that this Court deems necessary and just.

Seidman, Margulis & Fairman, LLP
Respectfully submitted,

By: /s/Sean M. Baker
Attorney for Plaintiff

Sean M. Baker
Seidman, Margulis & Fairman, LLP
Two First National Plaza
20 South Clark Street, Suite 700
Chicago, IL 60603
(312) 781-1977
sbaker@seidmanlaw.net
ARDC No.: 6224417