IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTER DIVISION

DANEE OLIVA, )
    Plaintiff, )
     )
v. ) No.: 21 CV 6001
     )
CITY OF CHICAGO, )
OFFICER JEREMIAH FORSELL #2921, )
OFFICER DAVID IVANOV #6667 )
OFFICER RICKEY #12201 )
    Defendants. )

## COMPLAINT

NOW COMES the Plaintiff, Danee Oliva, by and through his attorneys, Seidman, Margulis & Fairman and for his Compliant against the Defendants, City of Chicago, Officer Jeremiah Forsell #2921 ("Defendant Forsell"), Officer David Ivanov #6667 ("Defendant Ivanov"), Officer Rickey #12201 ("Defendant Rickey"); states the following:

### JURISDICTION:

The jurisdiction of this Court is invoked pursuant to the Civil Rights Act 42 U.S.C. § 1983; the Judicial Code, U.S.C. §1331; the Constitution of the United States; and the supplemental jurisdiction of this Court as codified in 28 U.S.C. §1367(a). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

### PARTIES:

1. Plaintiff, Danee Oliva, at all times relevant to this complaint was a resident of Chicago, Cook County, Illinois, and a citizen of the United States and was employed in Cook County, Illinois;

2. Defendant City of Chicago is a municipal entity which employs or employed the Defendant Officers.

3. Defendant Officers were at all times relevant to this action, members of the City of Chicago Police Department.

4. All of the foregoing Defendant Officers are sued in their individual capacities, and all acted under color of law and in the scope of their employment in engaging in the actions alleged in this Complaint. The City of Chicago was at all times material to this action the principal and employer of the above-referenced Defendant Officers.

## FACTS COMMON TO ALL COUNTS:

5. At all times relevant to this Complaint, Plaintiff, Danee Olivia resided at 6253 North Magnolia Avenue, Chicago, Cook County, Illinois with his roommate, John Crispino.

6. At some time prior to November 28, 2018, John Crispino placed his motor vehicle, a 2004 Toyota RAV-4, for use as a car sharing vehicle through an on-line service called Getaround;

7. Getaround is a web based peer-to-peer car sharing service that connects drivers who need to reserve cars with car owners who share their cars in exchange for payment.

8. At some time prior to and on November 28, 2018, a registered user of Getaround, Mike K., with a Getaround registered address of 60** N. Hermitage Avenue, Chicago, Illinois, used a validated credit card, Mastercard, ending in 2370, a linked Facebook account, a T-Mobile phone number of (312) 753-****; and two email addresses: K******.Michaelj@yahoo.com and mike*********@gmail.com; to rent the aforementioned 2004 Toyota RAV-4 from John Crispino via the Getaround app;

9. On November 28, 2018, Mike K. rented and picked up the carshare, the aforementioned 2004 Toyota RAV-4, at 4:30 p.m. from the location of 6251 North Magnolia Avenue, Chicago, Illinois and returned the vehicle later that evening at 10:30 p.m. to 6253 North Magnolia Avenue, Chicago, Illinois,

10. On or about November 28, 2018 between the hours of 10:00 a.m. and 6:06 p.m., Plaintiff, Danee Olivia, was at work, employed as a store manager at VileBrequin, 5220 Fashion Outlets Way #2053, Rosemont, Illinois having worked eight hours and six minutes that day.

11. On or about November 28, 2018 at 6:40 p.m., Plaintiff Danee Oliva was accompanied by and went with his friend to the AMC Rosemont 18 Movie Theater, a half mile from his workplace, located at 9701 Bryn Mawr Avenue, Rosemont, Illinois where they both watched the movie A Star is Born.

12. A Star is Born is a 2018 romance movie with a duration of 2 hours and 14 minutes.

13. Danee Olivia watched the entire movie with his girlfriend and never left the theater prior to the end of the movie.

14. At all times relevant to this Complaint, Defendant Officers were part of or working with the Chicago Police Department's Narcotics Division Squad D-7.

15. On or about October 26, 2018, through November 28, 2018, Defendant Forsell #2921, a member of the Narcotics Division Squad D-7, used the name "J" and "jay" to make contact with an individual at T-Mobile cell number (312) 753-**** using the name "Mikey"

16. Defendant Forsell obtained Mikey's contact information and cell number via a social media app called High There.

17. High There is advertised as an online cannabis community which combines a dating app into an all-in-one cannabis friendly social media, dating app, and cannabis business social network.

18. The text exchange between Defendant Forsell as "Jay" and "Mikey" at (312) 753-**** was as follows:

    October 26, 2018, at 11:36 a.m.:

        Mikey: "Looking for edibles?"

   Jay: "Hey" "More lokin for flowers and Lucy."

October 26, 2018, at 11:37 a.m.:

   Mikey: "Flowers soon rn edibles."

   Jay: "Lemme know"

   Mikey: "Need bud?"

November 20, 2018, at 9:01 p.m.:

   Mikey: "Need carts?" "Need lucy????"

   Jay: "Sure"

November 27, 2018 at 2:24 p.m.:

   Jay: "How much for lucy?"

   Mikey: "Ten each"

   Jay: "Coo that delivered?"

November 27, 2018 at 2:27 p.m.

   Jay: "I'll grab a 10 strip" "Hey" "Sure"

   Mikey: "So ten ok so $100"

   Jay: "Hey" "More lookin for flowers and Lucy"

19. On or about November 28, 2018, members of the Narcotics Division Squad D-7 formulated a plan to make a controlled narcotics purchase using an undercover officer, under the supervision of Chicago Police Officer, Sgt. Vanek, #1426. As part of the plan, Defendant Forsell, was in undercover capacity as "Jay" in an undercover vehicle and arranged a meeting for the transaction.

20. The eventual meeting location for the transaction was in the Target parking lot located at 2656 North Elston Avenue, Chicago, Illinois.

21. On November 28, 2018, the text exchange between Defendant Forsell as "Jay" and "Mikey" at (312) 753-**** was as follows:

November 28, 2018, at 4:45 p.m.

    Jay: "Hey j from high there told me to hit you up for tabs"

    Mikey: "Hey what's up man, I'm Mikey" "Can you call me I'm driving"

    Jay: "Ok I'm jay"

November 28, 2018, at 7:53 p.m.:

    Jay: "Im comin from Logan square I can leave here in like 10 so where's good?"

    Mikey: "I can hop on the highway and get to Logan in like 10 minutes"

    Jay: "Ok so wanna meet me by the target over there?"

    Mikey: "Yeah, what street is it on?"

    Jay: "Logan n Elston"

    Mikey: "Oh yeah for sure"

    Jay: "Ok I'll be there in like 15 or so"

    Mikey: "yeah that's perfect"

    Jay: "100 right?"

    Mikey: "Yeah"

    Jay: "Coo"

    Mikey: "You smile weed" "?" "Smoke😁*"

    Jay: "Not really gives me anxiety"

    Mikey: "My bad I'm driving" "Oh ok I hear ya"

    Jay: "My girl does though"

    Mikey: "I'll throw you a sample of the 707"

> Jay: "I'm here closer to Logan n elston kinda by where it says cvs pharmacy" "Coo" "Grey Mazda"
>
> Mikey: "For sure I'm almost there actually went to Fullerton on accident"
>
> Jay: "Coo"
>
> Mikey: "Silver Toyota RAV4" "Yo are you behind the security car?"
>
> Jay: "I dunno by the cart thing" "I see u behind me"
>
> Mikey: "Oh yea"

22. At approximately 8:12 p.m., Defendant Forsell approached the Toyota RAV-4 occupied by an unknown male wearing a black jacket and jeans. Defendant Forsell entered the Toyota RAV-4 and sat in the front passenger seat next to the individual named Mikey.

23. Defendant Forsell then received a clear zip lock bag containing a tin foil packet which contained ten (10) paper stamps. Thereafter, Defendant Forsell exchanged $100.00 in pre-recorded funds to Mikey.

24. Defendant Forsell then exited the vehicle and had a subsequent text exchange with Mikey which is as follows:

> November 28, 2018, at 9:18 p.m.:
>
> Mikey: "If you're interested. I have 5 more sheets I can run it for 300"
>
> Jay: "Coo I'll let you know"
>
> Mikey: "For sure"

25. Defendant Forsell then returned to the Narcotics Division Squad D-7 vehicle in the parking lot of Target .

26. Defendant Forsell informed his team via radio that a positive narcotics transaction had taken place.

27. The Narcotics Division Squad D-7 captured the transaction on a surveillance video. The video does not reveal Mikey's face. From the video, it appears Mikey was wearing a hat and eye glasses and was of light skin complexion. Defendant Forsell was seated in the vehicle next to Mikey for approximately 2 minutes and 20 seconds.

28. The suspect narcotics were not presumptively field tested at the scene.

29. Mikey was allowed to drive away.

30. A pretextual traffic stop of the Toyota RAV-4 to identify Mikey at the scene or thereafter was never conducted.

31. The pre-recorded funds of $100.00 were never recovered.

32. "Mikey" was never arrested.

33. Following the above described transaction, the Narcotics Division Squad D-7, including Defendant Forsell, relocated to the 16th District Police Station to inventory the suspected narcotics and to document the transaction.

34. While at the 16th District, Narcotics Division Squad D-7 including Defendant Forsell, conducted a LEADS search on the license plate of the Toyota RAV-4.

35. Defendant Ivanov conducted the LEADS vehicle license plate check for the Toyota RAV-4 which revealed that the registered owner was John Crispino of 6253 North Magnolia, Apartment 2 and provided a driver's license photo of John Crispino.

36. After obtaining Crispino's image through LEADS 2000, Defendant Forsell informed Defendant Ivanov that John Crispino was not "Mikey."

37. A subsequent check using the Accurint database for the address of 6253 North Magnolia, Apartment 2, was conducted and indicated that Plaintiff, Danee Oliva was also a resident there and provided Plaintiff's date of birth.

38. Defendant Ivanov then took Plaintiff's name, date of birth and address and ran it through the LEADS system and obtained Plaintiff's driver's license photo.

39. Plaintiff's photo was taken from the LEADS search.

40. On November 29, 2018, while in Unit 189, believed to be a motor vehicle, Defendant Forsell was presented with a "photo lineup" of six pictures which included the LEADS picture of Plaintiff, Danee Oliva.

41. Defendant Forsell then identified Danee Oliva from the six photos presented to him, as Mikey.

42. John Crispino's image was not one of the six photos placed in the photo lineup.

43. At the time of the photo array lineup, there existed a statute in the State of Illinois that governed how a lineup was to be conducted:

Line up Statute:

725 ILCS 5/107A-2 (the Illinois Lineup Statute) governs the manner and means by which law enforcement conducts lineups, including photo arrays. Specifically, subsection (f) mandates that in conducting a photo array or lineup:

1. "(1) When practicable, the lineup administrator shall separate all eyewitnesses in order to prevent the eyewitnesses from conferring with one another before and during the lineup procedure. If separating the eyewitnesses is not practicable, the lineup administrator shall ensure that all eyewitnesses are monitored and that they do not confer with one another while waiting to view the lineup and during the lineup." 725 ILCS 5/107A-2(f)(1). 725 ILCS 5/107A-2 (the Illinois Lineup Statute) governs the manner and means by which law enforcement conducts lineups, including photo arrays. Specifically, subsection (f) mandates that in conducting a photo array or lineup:

> "(1) When practicable, the lineup administrator shall *separate* all eyewitnesses in order to prevent the eyewitnesses from conferring with one another *before* and during the lineup procedure. If separating the eyewitnesses is not practicable, the lineup administrator shall ensure that all eyewitnesses are *monitored* and that they do *not* confer with one another while waiting to view the lineup and during the lineup." 725 ILCS 5/107A-2(f)(1).

Page **8** of **20**

44. Furthermore, the Lineup Statute mandates that "nothing *shall* be communicated to the eyewitness regarding anything that may influence the eyewitness's identification." 725 ILCS 5/107A-2(f)(5). " If the eyewitness identifies a person as the perpetrator, the eyewitness *shall not* be provided any information concerning the person until after the lineup is completed." 725 ILCS 5/107A-2(f)(11).

45. As detailed above the Defendant Officers violated the manner and means by which a photo array line up was to be conducted to prevent suggestion or bias and misidentification of an individual as an offender because Defendant Forsell was present during the LEADS searches.

46. As a result of the improper photo array procedure, Defendant Forsell identified Plaintiff as Mikey.

47. Subsequent to the improper photo array and identification, the contents of the zip loc bag and tin foil packet containing ten (10) paper stamps were sent to the Illinois State Police, Division of Forensic Services, Forensic Science Center at Chicago for drug chemistry testing and analysis.

48. On March 11, 2019, the Illinois State Police returned the lab results to Defendant Forsell.

49. The lab results stated: "No Scheduled Substance Found." Thus, the ten (10) stamps inside the tin foil tested negative for any controlled substance.

50. Plaintiff, Danee Oliva, was never questioned by the Chicago Police Department or any of the officers in the Narcotics Division Squad D-7 as to his whereabouts or activities of November 28, 2018.

51. At no time did the Narcotics Division Squad D-7 ever question John Crispino as to the use of his vehicle on November 28, 2018.

52. Mike K., "Mikey", was never questioned by the Chicago Police Department or by any of the Narcotics Division Squad D-7.

53. At no time did the Narcotics Division Squad D-7 ever investigate the identity or subscriber information for T-Mobile phone number Defendant Forsell used to text Mikey to arrange the aforementioned transaction.

54. On November 28, 2018, Defendant Forsell, signed a sworn criminal Complaint for listing Plaintiff, Danee Oliva, as Defendant, charging Plaintiff with possession and delivery of a controlled substance to whit: LSD in that Plaintiff "KNOWINGLY AND UNLAWFULLY MANUFACTURED / DELIVERY A SUBSTANCE CONTAINING LSD A CONTROLLED SCHEDULE I SUBSTANCE OTHER THAN AS AUTHORIZED IN THE CONTROLLED SUBSTANCE ACT" and in violation of 720 ILCS 570/401-D-II.

55. On November 28, 2018, Defendant Rickey, signed sworn criminal Complaint listing Plaintiff, Danee Oliva, as Defendant, charging Plaintiff with possession and delivery of a controlled substance to whit: LSD in that Plaintiff "KNOWINGLY AND UNLAWFULLY MANUFACTURED / DELIVERY A SUBSTANCE CONTAINING LSD A CONTROLLED SCHEDULE I SUBSTANCE OTHER THAN AS AUTHORIZED IN THE CONTROLLED SUBSTANCE ACT" and in violation of 720 ILCS 570/401-D-II.

56. The criminal Complaint further indicated: "ESTIMATED WEIGHT 10 HITS" and "ESTIMATED VALUE $50.00 USC."

57. Given that Defendant Forsell, provided Mikey with $100.00 marked U. S. dollars, the statement of the estimated value of $50.00 in the Preliminary Compliant was false and perjurious.

58. On March 11, 2019, Defendant Forsell and the Narcotics Division Squad D-7 were in possession of the results from the Illinois State Police lab which indicated the ten stamps that Defendant Forsell purchased from Mikey were negative for any controlled substance.

59. Based upon the aforementioned acts, Defendant Officers generated and participated in the creation of criminal complaints against the Plaintiff that were false and perjurious.

60. On October 8, 2019, at approximately 6:39 p.m. the Plaintiff, Danee Oliva was arrested at his home by Defendant Ivanov.

61. Based upon the aforementioned acts, omissions, and lab results, probable cause for the arrest of Plaintiff, Danee Oliva, did not exist.

62. On October 8, 2019 at approximately 6:39 p.m., Plaintiff, Danee Oliva was placed in a lockup at Chicago Police Department District 20. and was released on bond by Judge Navarro in Central Bond Court the following morning, October 9, 2019.

63. On October 9, 2019, at Central Bond Court, of the Circuit Court of Cook County, Illinois a $25,000.00 I-bond was set for Plaintiff, Danee Oliva, by Judge Navarro.

64. On December 6, 2019, the Cook County State's Attorney requested that the court enter a *nolle prosequit* on the charges of delivery of a controlled substance due to the aforementioned exculpatory lab result and lack of probable cause for prosecuting Plaintiff and the case was dismissed.

65. In an ongoing effort to secure an conviction and avoid civil liability for their malicious acts and omissions detailed above, Defendant Officers sought to have the charges of the original Complaint amended and Plaintiff indicted for the charge of delivery of a look alike substance.

66. On December 27, 2019, Defendant Ivanov gave testimony before the Grand Jury which returned a true bill for delivery of a look alike substance which caused Plaintiff to re-appear in court to be arraigned on the new charge of delivery of a look alike substance and new bond was set by the court.

67. On November 13, 2020, the Cook County State's Attorney requested that the court enter a *nolle prosequit* on the charges of delivery of a look alike substance due to the aforementioned lack of probable cause for prosecuting Plaintiff and the case was dismissed.

68. All criminal charges maliciously brought by Defendant Officers were resolved in Plaintiff's favor.

69. On November 28, 2018, Plaintiff Danee Oliva had not committed any act contrary to the laws of the State of Illinois.

70. The aforementioned conduct of the Defendant Officers violated the Fourth and Fourteenth Amendment of the United States Constitution.

71. As a direct and proximate result of one or more of the aforesaid acts and omissions of the Defendant Officers, Plaintiff, Danee Oliva, was caused to suffer damages including having his fingerprints taken, the creation of a permanent criminal background, physical, financial, incur attorney's fees, mental and emotional injury, pain, mental anguish, humiliation and embarrassment.

## COUNT I - §1983 DUE PROCESS

72. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

73. As stated throughout this Complaint, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under the color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to be free from prosecution without probable cause.

74. As stated more thoroughly in the facts laid forth above and throughout this Complaint, the Defendants deliberately conducted a tainted lineup, provided false information on the criminal

complaint and provided false testimony to the grand jury, thereby misleading and misdirecting the criminal prosecution of Plaintiff, Danee Oliva. Absent this misconduct, the prosecution of Plaintiff, Danee Oliva, could not and would not have been pursued.

75. The Defendant Officer' misconduct directly resulted in the malicious prosecution of Plaintiff, thereby denying him his constitutional right to be free from prosecution and arrest without probable cause, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

76. As a result of said violations of Plaintiff, Danee Oliva's constitutional rights, Plaintiff suffered injuries including but not limited to emotional distress as indicated in the facts of this Complaint.

77. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

78. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department as described throughout this Compliant.

**COUNT II - § 1983 CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

79. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

80. As stated above, all of the Defendant Officers, individually and jointly and in conspiracy, under color of law and acting within the scope of their employment as police officers, deprived the Plaintiff, Danee Oliva, of his constitutional rights under the Fourth and Fourteenth Amendments.

81. Defendant Officers, conspired to cause damages to Plaintiff in the following manner:
    a. agreeing to falsely swear to and institute criminal charges and proceedings against the Plaintiff.

b. agreeing to falsely arrest Plaintiff.

c. agreeing not to report each other after witnessing an improper lineup and identification.

d. agreeing not to report each other after falsely charging Plaintiff with delivery of a controlled substance.

e. agreeing not to report each other after falsely arresting and charging the Plaintiff.

f. jointly and individually generating documentation to cover up for their own and each other's misconduct.

g. jointly and individually generating false criminal Complaint against the Plaintiff to cover up their misconduct.

h. continuing to pursue criminal charges and providing false testimony to a grand jury to secure a subsequent indictment against the Plaintiff for the purpose of covering up their own and each other's misconduct.

i. had plaintiff re-indicted and pursued criminal charges against the Plaintiff for the purpose of covering up their own and each other's misconduct.

82. Defendant Officers continuously engaged in communications and conduct where they agreed to facilitate, engage in and support the activity in arresting and maliciously prosecuting Plaintiff. As a result of the conspiracy, the Defendant Officers by and through their conduct, proximately caused Plaintiff to, *inter alia*, be wrongfully charged with criminal allegations, incur financial losses, including attorney's fees, and suffer physical, mental and emotional injury, pain, mental anguish, suffering humiliation and embarrassment.

## COUNT III - § 1983 FAILURE TO INTERVENE

83. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

84. As stated throughout this Complaint, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.

85. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff, Danee Oliva, suffered pain and injury as well as emotional distress. These Defendants had reasonable opportunity to prevent this harm, but failed to do so.

86. The misconduct describe in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

87. The misconduct described in this Count was undertaken pursuant to the Chicago Police Department's policy and practice in the manner described throughout this Complaint and set forth above.

88. As a result of the said failure to intervene, the Defendant Officers by and through their conduct, proximately caused Plaintiff to, *inter alia*, be wrongfully charged with criminal allegations, incur financial losses, including attorney's fees, and suffer physical, mental and emotional injury, pain, mental anguish, suffering humiliation and embarrassment.

## COUNT IV - *MONELL* CLAIM

89. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

90. Rather than perform good police work necessary to properly solve the alleged crime, the Defendants instead conspired among themselves and with others to shortcut the process. Specifically, Defendants unjustly singled out the Plaintiff as a suspect and then actively endeavored to stretch and manipulate facts and evidence to indicate that Plaintiff was guilty of a crime he did not commit.

91. Said manipulation of facts and information included improper suggestiveness of a photo array and false testimony on criminal complaints and to the grand jury all of which violated Plaintiff's constitutional rights.

92. In swearing to the criminal complaint, the Defendant Officers disregarded exculpatory evidence including but not limited to a negative lab result for controlled substances and an improperly suggestive photo array.

93. Through improper suggestiveness and unconstitutional tactics, the Defendants manipulated the photo array to try to create a false inference that Plaintiff was the individual driving the Toyota RAV-4 and delivered a controlled substance to Defendant Forsell.

94. The unconstitutional acts and omissions including the suggestive photo array and perjurious information on the criminal complaint, was undertaken and pursuant to and proximately caused by policies and practices of the Chicago Police Department.

95. At all times relevant to this Complaint, members of the Chicago Police Department, including the Defendant Officers in this matter, systematically suppressed evidence, routinely engaged in improper suggestive conduct, and perjury on complaints.

96. Plaintiff was also the victim of ,and his injuries were caused by, policy and practice at the Chicago Police Department to pursue and secure false convictions through deeply flawed investigations.

97. At all times relevant to this Complaint, the Chicago Police Department had an institutional desire to clear crimes more expediently regardless of actual guilt or innocence of the individuals charged, in order to benefit police officer's personal standing in the Chicago Police Department. This conduct was know to the command personnel who took part and approved said practices.

98. The aforementioned practices became *de facto* policy in the Chicago Police Department at all times relevant to this Complaint. Municipal policy makers at the City of Chicago knew of said practices and exhibited a deliberate indifference to said practices.

99. Said practices were allowed to exist because the City of Chicago declined to implement sufficient training and meaningful oversight of its police officers including Defendant Officers.

100. Chicago police officers, including Defendant Officers, who manufactured criminal cases against individuals such as Plaintiff, Danee Oliva, had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and discipline, but that they also stood to be rewarded for closing cases no matter what the cost. In this way, this system proximately caused abuses such as the misconduct detailed throughout this Complaint.

101. Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

102. Defendants have acted with deliberate indifference to the constitutional rights of the Plaintiff, Danee Oliva.

103. As a direct and proximate result of the acts as stated herein by each of the Defendants, the Plaintiff's constitutional rights have been violated which has caused him to, *inter alia*, be wrongfully charged with criminal allegations, incur financial losses, including attorney's fees, and suffer physical, mental and emotional injury, pain, mental anguish, suffering humiliation and embarrassment.

104. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing their unlawful policie, practices, and customs which have directly and proximately cause such constitutional abuses.

## COUNT V - MALICIOUS PROSECUTION - STATE CLAIM

105. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

106. Defendants caused Plaintiff, Danee Oliva, to be improperly subjected to judicial proceedings for which there was no probable cause. The aforementioned judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

107. The Defendant Officers identified above accused Plaintiff, Danee Oliva, of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors, judges and the grand jury with the intent of exerting influence to institute and continue the judicial proceedings.

108. Statements of the Defendant Officers regarding Plaintiff, Danee Oliva's alleged culpability were made with knowledge that said statements were false and perjured. In so doing, the Defendants fabricated evidence and withheld exculpatory information.

109. The misconduct described herein and throughout this Complaint was done with malice, willfulness and reckless indifference to the rights of others, notably Plaintiff, Danee Oliva.

110. As a result of said misconduct, Plaintiff, Danee Oliva, sustained and continues to sustain injuries including, *inter alia*, be wrongfully charged with criminal allegations, incur financial losses, including attorney's fees, and suffer physical, mental and emotional injury, pain, mental anguish, suffering humiliation and embarrassment.

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS STATE CLAIM

111. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

112. The acts and conduct of the Defendant Officers as alleged throughout this Complaint, were extreme and outrageous.

113. The Defendant Officers intended to cause, or were in such reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff as detailed throughout this Complaint.

114. Said actions and conduct directly and proximately caused severe emotional distress to Plaintiff, Danee Oliva, and thereby constituted intentional infliction of emotional distress.

115. The misconduct described in this Count was conducted with malice, willfulness and reckless indifference to the rights of others, namely Plaintiff, Danee Oliva.

116. As a proximate result of Defendants' wrongful acts and omissions, Plaintiff suffered damages including, *inter alia*, be wrongfully charged with criminal allegations, incur financial losses, including attorney's fees, and suffer physical, mental and emotional injury, pain, mental anguish, suffering humiliation and embarrassment.

### COUNT VII - RESPONDEAT SUPERIOR - STATE CLAIM

117. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

118. In committing the acts alleged throughout this Complaint, each of the Defendant Officers were members, agents and servants of the City of Chicago and the Chicago Police Department acting at all relevant times herein within the scope of their employment and under color of law.

119. Defendant, City of Chicago, is liable as the principal of the Defendant Officers and for all of the torts committed by its agents and servants, including Defendant Officers.

## COUNT VIII - INDEMNIFICATION

120. Plaintiff incorporates and re-alleges each Paragraph of this Complaint as if fully restated herein.

121. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

122. The Defendant Officers are or were employees of the Chicago Police Department and City of Chicago, who acted within the scope of their employment in committing the misconduct described throughout this Complaint.

WHEREFORE the Plaintiff, Danee Oliva, respectfully requests that this Court enter judgment in his favor and against the Defendants, City of Chicago, Officer Jeremiah Forsell #2921, Officer David Ivanov #6667, and Officer Rickey #12201 for an amount in excess of $50,000.00 compensatory damages, costs for bringing this suit, and attorney's fees, and for any other relief this Court deems equitable and just.

## JURY DEMAND

Plaintiff, Danee Oliva, demands trial by jury.

Respectfully submitted,<br>
Seidman, Margulis & Fairman, LLP

by: /s/Sean M. Baker
Sean M. Baker

Sean M. Baker
Seidman, Margulis & Fairman
Two First National Plaza
20 South Clark Street, Suite 700
Chicago, IL 60603
(312) 781-1977
sseidman@seidmanlaw.net