IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANEE OLIVA, | |
|         Plaintiff, | No. 21-cv-06001 |
| v. | Judge John F. Kness |
| CITY OF CHICAGO, OFFICER JEREMIAH FORSELL #2921, OFFICER DAVID IVANOV #6667, AND OFFICER RICKEY #12201 | |
|         Defendants. | |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Danee Oliva sued three Chicago Police Department (CPD) Officers and the City of Chicago after an arrest and resulting prosecution that Plaintiff asserts was unconstitutional. Plaintiff raises four theories of relief: a claim under 42 U.S.C. § 1983 against the Officers for violating Plaintiff's Fourth and Fourteenth Amendment rights (Count I); two derivative claims against the Officers for conspiracy (Count II) and failure to intervene (Count III); and a *Monell* claim against the City (Count IV). Plaintiff also brings four separate state-law claims for malicious prosecution (Count V), intentional infliction of emotional distress (Count VI), respondeat superior (Count VII), and indemnification (Count VIII).

    Before the Court is Defendants' motion to dismiss all claims as untimely. (Dkt. 12.) For the reasons that follow, the Court agrees that Plaintiff's case must be dismissed without prejudice (but with leave to amend). Plaintiff's alleged injury—

false arrest and unlawful pretrial detention—ceased when Plaintiff was released on bond over two years before he filed suit. Count I is therefore time-barred under the applicable two-year statute of limitations. Because the same two-year statute of limitations applies to Counts II, III, and IV, and because those counts are premised on the same underlying violation, those Counts are also untimely. Finally, because all federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

I.   BACKGROUND

As alleged in the complaint, this case concerns a drug investigation that led to the brief, but wrongful, arrest and detention of Plaintiff Danee Oliva. Plaintiff lived with John Crispino, who owned a 2004 Toyota RAV-4. (Dkt. 1 ¶ 5.) Crispino listed the vehicle on an online car-sharing service called Getaround, which connects vehicle owners with short-term renters. (*Id.* ¶ 6–7.) On November 28, 2018, Crispino rented his vehicle to Mike K. from 4:30 p.m. until 10:30 p.m.[1] (*Id.* ¶ 8.) During this time, Mike K. set up a drug sale with two undercover officers with whom he had communicated for over a month via text message. (*Id.* ¶¶ 15-22.) Defendant Forsell was one of these undercover officers. (*Id.* ¶ 15.)

Mike K. met with the undercover officers at approximately 8:12 p.m. in a retail parking lot. (*Id.* ¶ 22.) Defendant Forsell entered the Toyota RAV-4 and gave Mike K. $100.00 for a tin foil packet containing ten paper stamps. (*Id.* ¶¶ 22-23.) Defendant Forsell returned to the undercover squad vehicle and reported a positive narcotics

---

[1] Mike K. is not a party to this case.

2

transaction but allowed Mike K. to drive away without arresting him. (*Id.* ¶ 29.) A video recording captured the transaction and showed a light skinned person wearing a hat and eyeglasses but did not show the person's face. (*Id.* ¶ 27.)

Back at the police station, Defendant Officer Ivanov conducted a search on the Toyota RAV-4 license plate using a law enforcement database, which revealed that the vehicle was registered to Crispino at the address he shared with Plaintiff and provided Crispino's driver's license photo. (*Id.* ¶ 35.) After looking at Crispino's photo, Defendant Forsell told Defendant Ivanov that Crispino was not the person who sold him the drugs. (*Id.* ¶ 36.) The officers ran Crispino's address through a different database and discovered that Plaintiff also resided there. (*Id.* ¶ 37.) Defendant Ivanov then searched a database to obtain Plaintiff's driver's license photo and presented it to Defendant Forsell in a lineup with five other photos. (*Id.* ¶38-40.) Defendant Forsell identified Plaintiff as the person who had sold him the drugs. (*Id.* ¶ 41.) That same day, November 28, 2018, Defendant Officers Forsell and Rickey signed a sworn criminal complaint charging Plaintiff with possession and delivery of a controlled substance. (*Id.* ¶¶ 54-55.)

Before signing the criminal complaint, the Defendant Officers did not investigate whether Plaintiff was the subscriber linked to Mike K's phone number, did not question Crispino about the use of his vehicle on the night of the exchange, and did not question Plaintiff as to his whereabouts. (*Id.* ¶¶ 50-53.) Had they done so, Plaintiff alleges, they would have discovered that, on the night of the sale, Plaintiff

3

worked until around 6:00 p.m. and then went to the movie theater with his girlfriend until around 9:00 p.m. (after the drug deal occurred). (*Id.* ¶¶ 11-14.)

Several months later, Defendant Forsell received lab results showing that the contents of the tin foil packet tested negative for any controlled substance. (*Id.* ¶ 48-49.) Despite the negative lab results, Defendant Ivanov arrested Plaintiff at his home on October 8, 2019. (*Id.* ¶ 60.) Plaintiff was placed in lockup at CPD District 20 and was released on bond the following morning. (*Id.* ¶ 62.) But because of the negative lab results and lack of probable cause, on December 6, 2019, the Cook County State's Attorney dismissed the charge of delivery of a controlled substance. (*Id.* ¶ 64.)

On December 27, 2019, Defendant Ivanov testified before a grand jury; Plaintiff was then indicted and arraigned for the charge of delivery of a look-alike substance. (*Id.* ¶ 66.) Unlike with the first charge, Plaintiff appeared in court on this new charge without being arrested and detained in lockup overnight. (*Id.* ¶¶ 60, 62, 66.) A state judge imposed a new bond on Plaintiff for this new charge. (*Id.* ¶ 66.) But nearly a year later, the Cook County State's Attorney again dismissed the indictment based on the lack of probable cause. (*Id.* ¶ 67.)

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

If there is any set of facts, consistent with the complaint, "that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). If, however, the "allegations of the complaint itself set forth everything necessary" to determine the timeliness of the plaintiff's claims, the statute of limitations defense may be raised and decided on a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

### III. DISCUSSION

#### A. Section 1983 Claim (Count I)

Plaintiff's section 1983 claim alleges that Defendants deprived him of "his constitutional right to be free from prosecution and arrest without probable cause, in violation of the Fourth and Fourteenth Amendments." (Dkt. 1 ¶ 75.) But Defendants

5

say the alleged constitutional violations suffered by Plaintiff (false arrest and unlawful pretrial detention) are governed exclusively by the Fourth Amendment. (Dkt. 12 at 3.) Defendants further contend that Plaintiff's Fourth Amendment claim is untimely because the applicable two-year statute of limitations began to run when Plaintiff was released on bond on October 9, 2019, more than two years before Plaintiff filed his complaint on November 9, 2021. (*Id.* at 4-5.) Plaintiff responds to Defendants' statute of limitations argument by requesting leave to amend the complaint with allegations that Plaintiff's bond conditions violated due process by preventing him from exercising his right to interstate travel. (Dkt. 19 at 5-8.) Critically, the travel restriction extended into the statute of limitations period, meaning Plaintiff's claim would be timely (assuming the proposed amendments otherwise state a claim).

Defendants argue, and the Court agrees, that Plaintiff's alleged injury is grounded exclusively in the Fourth Amendment. *See Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("[A] § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment.") (emphasis in original). Plaintiff's claim is therefore untimely because, as explained more fully below, he filed it more than two years after his cause of action accrued.

### i. Plaintiff's section 1983 claim is grounded in the Fourth Amendment.

Plaintiff alleges that Defendants "conducted a tainted lineup, provided false information on the criminal complaint and provided false testimony to the grand jury," which caused Plaintiff to be arrested and prosecuted without probable cause.

6

(*Id.* ¶ 74.) These allegations are, as Defendants correctly argue, grounded exclusively in the Fourth Amendment, not the Due Process Clause.

An "act of evidence fabrication doesn't implicate due-process rights *unless* the fabricated evidence 'is later used to deprive the criminal defendant of [his] liberty in some way.'" *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)) (emphasis in original). If falsified evidence is not used to secure a conviction, then no liberty deprivation necessary to sustain a due process claim has occurred. *See Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) ("The essence of a due-process evidence-fabrication claim is that the accused was *convicted and imprisoned* based on knowingly falsified evidence.") (emphasis added); *see also Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016) (Plaintiffs who "were quickly released on bond following their arrests" and "were never actually tried" could not maintain a due process claim for fabrication of evidence.); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015) (Because "Saunders-El [was] released on bond following his arrest and acquitted at trial, . . . [he] cannot make out an evidence fabrication-based due process violation.").

An initial arrest and pretrial detention premised on falsified evidence may, however, be challenged under the Fourth Amendment. *See Alexander v. McKinney*, 692 F.3d 553, 554–56 (7th Cir. 2012) (Plaintiff, who was arrested, charged, and acquitted based on fabricated evidence may challenge the lawfulness of his arrest under the Fourth Amendment.); *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention

7

unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").

Plaintiff alleges that Defendants fabricated evidence that was used to justify Plaintiff's later arrest and indictment. But Plaintiff was released on bond the morning after his arrest and was never convicted; the state dropped both charges via *nolle prosequi* motions before trial. Because there was no conviction, Plaintiff has not suffered the liberty deprivation that is necessary to state a due process claim. *See McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (Plaintiff may not combine "what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment."). But that holding does not end the matter, as it is possible that Plaintiff's allegedly unlawful arrest and pretrial detention violated the Fourth Amendment. That means the Court must turn next to whether Plaintiff's Fourth Amendment claim is timely.

### ii. Plaintiff's Fourth Amendment claim is time-barred.

Section 1983 claims "are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). In Illinois, where Plaintiff was arrested and detained, the "statute of limitations for personal-injury actions is two years from when the cause of action accrued." *Id.* (citing 735 ILCS 5/13-202). Although state law determines the applicable statute of limitations, the "accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A

8

section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (quoting *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). Courts must use a two-step process to determine the accrual date: "(1) we identify the injury and (2) we determine when the plaintiff could have sued for that injury." *Id.*

It is indisputable that the Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. As a general rule, a seizure within the meaning of the Fourth Amendment is reasonable "only if based on probable cause to believe that the individual has committed a crime." *Lewis*, 914 F.3d at 476. An individual suffers a constitutional injury if he is arrested and detained pretrial without probable cause. *Id.* at 476–77 (clarifying that wrongful pretrial detention is a constitutional injury because it is a seizure made without probable cause). That constitutional injury ends, and thus the claim accrues, on the day of the arrest. *See Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998). A claim for wrongful pretrial detention accrues when the detainee is released from custody. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018) ("Because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of detention.").

Plaintiff alleges that he was unlawfully arrested on October 8, 2019 and detained until he was released on bond the next morning. When Plaintiff was released on bond, his detention ceased, which put an end to his constitutional injury. Plaintiff's

9

claims for false arrest and unlawful pretrial detention thus accrued, at the latest, on October 9, 2019. Because it accrued over two years before Plaintiff filed suit on November 9, 2021, Plaintiff's Fourth Amendment claim is therefore time-barred. (Dkt. 1.); *Neita*, 830 F.3d at 498.

### iii. Plaintiff is granted leave to amend solely to address the interstate travel restriction bond condition.

In Plaintiff's response to Defendants' motion to dismiss, Plaintiff recharacterizes his claim: Defendants' evidence fabrication resulted not only in false arrest and pretrial detention, but also caused a bond condition that deprived Plaintiff of his right to interstate travel in violation of due process. (Dkt. 19 at 5.) Plaintiff was required to "not leave [Illinois] without permission of court" while on bond from October 9, 2019 to December 6, 2019, and again from December 27, 2019 to November 13, 2020, which would place this alleged due process violation within the applicable statute of limitations period and make Plaintiff's claim timely. (Dkt. 19-2.) Plaintiff's complaint never mentions the travel restriction, nor does it allege that Plaintiff's right to interstate travel was violated. (*See, generally*, Dkt. 1.) Plaintiff includes the bond conditions in an exhibit attached to his response to Defendants' motion to dismiss and asks the Court for leave to amend the complaint to incorporate this exhibit. (Dkt. 19 at 8; Dkt. 19-2.)

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts, nevertheless, have "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue

10

prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). The "opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (quoting *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997)) (cleaned up).

It is settled that the right to interstate travel is "an aspect of liberty that is protected by the Due Process Clauses of the Fifth and Fourteenth Amendments." *Jones v. Helms*, 452 U.S. 412, 418–19 (1981). But as the Seventh Circuit has explained, bond conditions that require a defendant to seek court permission to travel do not violate this right. In *Albright v. Oliver*, for example, the Seventh Circuit affirmed the dismissal of a due process claim because the bond condition prohibiting the defendant from leaving the state without court permission did not "materially curtail[]" the defendant's right to travel. 975 F.2d 343, 344, 347–48 (7th Cir. 1992); *see Towne v. Donnelly*, 2021 WL 3022327, at *4 (N.D. Ill. July 16, 2021) (finding no "legal authority supporting [plaintiff's] allegations that his freedom of movement or his bond restrictions amount to the deprivation of a liberty to support his due process claim"). Simply put, Plaintiff's bond conditions, which allowed interstate travel with court permission (Dkt. 19-2), did not—as a matter of law—amount to a deprivation of his liberty.

Even if the Court were to construe Plaintiff's right to travel claim under the Fourth Amendment instead of the Fourteenth Amendment, it would still fail: bond

11

conditions generally do not work a seizure. To be sure, bond conditions "*might* be construed as a 'seizure' for Fourth Amendment purposes if the conditions . . . impose significant restrictions on liberty." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016–17 (7th Cir. 2019) (emphasis added). But the travel restriction at issue here did not significantly restrict Plaintiff's liberty. Indeed, in *Bielanski v. County of Kane*, the Seventh Circuit held that an identical travel restriction was an "insufficient restraint[] on freedom of movement to constitute a seizure," especially because the defendant did "not claim that the court denied her any request to travel outside the state, only that she was required to request permission." 550 F.3d 632, 642 (7th Cir. 2008); *see Smith v. City of Chicago*, 3 F.4th 332, 341–42 (7th Cir. 2021) ("There is no restriction on the defendant's freedom of movement unless he is denied permission to leave."), *vacated on other grounds by* 142 S. Ct. 1665 (2022). Plaintiff does not allege that he requested permission to travel but was denied. Accordingly, Plaintiff's allegations regarding the travel restriction, as they currently stand, fail to state a Fourth Amendment claim.

Because Plaintiff's travel restriction was neither a due process nor Fourth Amendment violation, *see Albright*, 975 F.2d at 344, 347–48 and *Bielanski*, 550 F.3d at 642, the Court doubts that Plaintiff would ever be able to state a plausible Constitutional claim based on the bond conditions he faced. But the Seventh Circuit has also cautioned, repeatedly, that plaintiffs should generally receive "at least one opportunity to try to amend," regardless of "how unpromising the initial pleading appears." *Runnion*, 786 F.3d at 519–20; *see In re Potter*, 616 B.R. 745, 753 (Bankr.

12

N.D. Ill. 2020) (A "plaintiff should be denied leave to amend only if the opportunity would clearly be futile, and that kind of clarity is rare.") (cleaned up). Accordingly, the Court dismisses Count I without prejudice and grants Plaintiff leave to amend if, in good faith and consistent with Rule 11 of the Federal Rules of Civil Procedure, Plaintiff believes he can state a claim premised on the travel restriction.[2]

### B. Conspiracy and Failure to Intervene Claims (Counts II and III)

Plaintiff alleges that Defendants conspired to arrest and maliciously prosecute Plaintiff and committed several acts in furtherance of this conspiracy. (Dkt. 1 ¶¶ 81-82.) Plaintiff also claims that one or more Defendants failed to intervene to prevent the misconduct. (*Id.* ¶ 84.)

Plaintiff's conspiracy and failure to intervene claims derive (factually and legally) from his underlying section 1983 claim. *See Serrano v. Guevara*, 315 F.Supp.3d 1026, 1042 n.16 (N.D. Ill. 2018). Derivative claims fail when the underlying claim upon which they rely fails. *See, e.g.*, *Rosado v. Gonzalez*, 832 F.3d

---

[2] Plaintiff also requests leave to amend with "an additional theory of liability that may lie under the Equal Protection Clause" that Plaintiff became aware of "in the course of researching" his response to Defendant's motion to dismiss. But Plaintiff's new assertion would, to the prejudice of Defendants at the eleventh hour, "substantially change[] the theory of the instant action" from unlawful seizure to unequal treatment. *See Johnson v. Sales Consultants, Inc.*, 61 F.R.D. 369, 371 (N.D. Ill. 1973); *see also Humphrey v. Navient Solutions, LLC*, 2017 WL 11547512, *2 (W.D. Wis. July 24, 2017) (Defendants are often prejudiced by "new factual allegations" that "substantially change the nature of the case."). Seeking to advance brand-new theories at this point is unwarranted: Plaintiff should have researched his potential claims for relief at the outset of the case, not in response to this perhaps-inevitable motion to dismiss. Because allowing Plaintiff to assert a wholly new theory now would cause unfair prejudice to Defendants, *see, e.g., Allen v. Brown Advisory, LLC,* 41 F.4th 843, 853 (7th Cir. 2022) ("Prejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2)."), the Court grants Plaintiff leave to file an amended complaint only as to the travel condition of Plaintiff's bond.

13

714, 718 (7th Cir. 2016) (Conspiracy and failure to intervene claims are time-barred because the underlying constitutional violation is a time-barred false arrest claim.); *Ericson v. Frankenberry*, 2018 WL 10758708, at *4 (N.D. Ill. Mar. 20, 2018) ("[A]ny related claim of conspiracy or failure to intervene" fails because underlying Fourth Amendment claim fails.). Because Plaintiff's section 1983 claim is time-barred, the derivative conspiracy and failure to intervene claims are also untimely. Counts II and III are thus dismissed.

### C. *Monell* Claim (Count IV)

When the "execution of a government's policy or custom . . . inflicts the [constitutional] injury," the local government can be held responsible under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff claims that his false arrest and unlawful detention occurred due to *de facto* policies and practices of CDP "to pursue and secure false convictions through deeply flawed investigations." (Dkt. 1 ¶ 96.) According to Plaintiff, the CPD "had an institutional desire to clear crimes more expediently regardless of actual guilt or innocence of the individuals charged, in order to benefit police officer's [sic] personal standing in the [CPD]." (*Id.* ¶¶ 97–98.) Plaintiff further claims that these policies were allowed to exist because of a lack of sufficient training and meaningful oversight over Defendant Officers and others. (*Id.* ¶ 99.)

As Defendants correctly contend, Plaintiff's *Monell* claim is similarly time-barred because the two-year statute of limitations for the underlying section 1983 claim also applies to the *Monell* claim. *See Jones v. Burge*, 2012 WL 2192272, at

14

\*8 (N.D. Ill. June 13, 2012) ("Because *Monell* policy claims fall under the scope of Section 1983, they are also subject to the two-year statute of limitations in Illinois."). As with an individual liability claim, a *Monell* claim accrues when the plaintiff knows or should know that his constitutional rights were violated. *Armour v. Country Club Hills*, 2014 WL 63850, at \*5 (N.D. Ill. Jan. 8, 2014). As discussed above, the only plausibly alleged constitutional injury suffered by Plaintiff was his unlawful arrest and overnight detention before he was released on bond. Plaintiff's *Monell* claim thus accrued contemporaneously with his underlying Fourth Amendment claim. And because a two-year statute of limitations is applicable to both claims, the *Monell* claim is also untimely. *See Hill v. City of Chicago*, 2014 WL 1978407, at \*3 (N.D. Ill. 2014) (Because the false arrest claim was untimely, the "*Monell* claims [] based on the alleged false arrest and illegal seizure . . . are time-barred."). Count IV is dismissed.

### D. Supplemental State Claims (Counts V, VI, VII, and VIII)

All of Plaintiff's federal claims have been dismissed, leaving only Plaintiff's state law claims for malicious prosecution, intentional infliction of emotional distress, respondeat superior, and indemnification. A federal court "may decline to exercise supplemental jurisdiction" over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). It is presumed that a federal court "will relinquish federal jurisdiction over any supplemental state-law claim" if "all federal claims . . . are dismissed before trial." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). Of course, the "usual practice is to dismiss without prejudice . . . ." *Groce v. Eli Lilly & Co.*, 193

15

F.3d 496, 501 (7th Cir. 1999). Because Plaintiff's federal claims have been dismissed, his remaining state-law claims are dismissed without prejudice.

*     *     *

Although the Court finds, as its judgment compels, that Plaintiff's case is untimely, it must acknowledge the serious nature of the facts Plaintiff asserts. If these allegations are true (they have been neither proven nor tested in the adversarial process), Plaintiff was subjected to a wrongful arrest and protracted legal jeopardy based on proceedings that lacked the required foundation of probable cause. Plaintiff's effort to vindicate his rights is thus both understandable and weighty. But limitation periods exist to ensure that important claims are brought soon enough to ensure accuracy and reasonable finality, and as established law they are binding. Because Plaintiff's case is untimely, it must be dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. 12) is granted, and all claims are dismissed without prejudice. Any amended complaint must be submitted on or before April 14, 2023.

SO ORDERED in No. 21-cv-06001.

Date: March 24, 2023

JOHN F. KNESS
United States District Judge