IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANEE OLIVA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, OFFICER ) <br> JEREMIAH FORSELL #2921, OFFICER ) <br> DAVID IVANOV #6667, and OFFICER ) <br> RICKEY #12201, ) <br> ) <br> Defendants. ) | Case No.   21 CV 6001 <br><br> Judge: John F. Kness <br><br> Magistrate Judge: Jeffrey Cole |

### PLAINTIFF'S MOTION TO ALTER THE JUDGMENT PURSUANT TO RULE 59(E)

Plaintiff DANEE OLIVA, by his attorneys, Seidman Margulis & Fairman, LLP, for his Motion to Alter the Judgment Pursuant to Federal Rule of Civil Procedure 59(e), states as follows:

I. **INTRODUCTION**

This case arises out of an ongoing pattern of evidence manipulation and falsification by Chicago police officers as part of a series of prosecutions maintained against the Plaintiff without probable cause. Plaintiff's roommate's vehicle was used as part of a drug deal arranged with undercover police officers; the police officers allowed the drug dealer to leave without arresting him, instead returning to the police station and running the plates while illegally tainting the witness for a forthcoming photo line-up. The substances obtained in the deal were sent to a lab and identified to Defendants as not containing any controlled substances whatsoever. Defendants conducted no further investigation, instead producing a series of sworn criminal Complaints charging Plaintiff with knowingly manufacturing and/or delivering a controlled substance. Plaintiff was arrested and locked up on October 8, 2019, then released under $25,000 bond. The charges were dismissed under a *nolle prosequi* for lack of probable cause. Defendants then pursued charges for delivery of a look-alike substance, with Defendant David Ivanov giving testimony to a grand jury on December 27, 2019.

These new charges, too, were dismissed under a *nolle prosequi* for lack of probable cause, but not until November 13, 2020. It was only at this point that the malicious prosecution concluded.

On November 9, 2021, less than one year later, Plaintiff filed an eight-count Complaint against Defendants alleging violation of due process based upon malicious prosecution under Section 1983, conspiracy, failure to intervene, *Monell* violation, malicious prosecution, intentional infliction of emotional distress, respondeat superior, and indemnification. On March 1, 2022, Defendants jointly moved to dismiss all counts; on April 8, 2022, Plaintiff responded. On March 24, 2023, the Court granted Defendants' motion to dismiss without prejudice, holding that the malicious prosecution claim from Count I was in fact a claim under the Fourth Amendment and that such a claim was time-barred. The Court gave Plaintiff until April 14, 2023 to amend the Complaint with a good-faith basis for asserting a seizure under due process based upon restrictions to his freedom of movement pursuant to his release on bond. This motion follows.

## II. **STATEMENT OF FACTS**

1. At all relevant times, Plaintiff resided in Cook County, Illinois. (Complaint[1] ¶ 1.)

2. At all relevant times, Plaintiff lived with a roommate named John Crispino. (Complaint Count ¶ 5.)

3. At all relevant times, Defendant Officers were part of or working with the Chicago Police Department's Narcotics Division Squad D-7. (Complaint Count ¶ 14.)

4. During the approximately one-month period prior to November 28, 2018, Defendant Officer Jeremiah Forsell made contact with an individual identifying himself as "Mikey" through an app named "High There" and arranged for the purchase of LSD.

5. At some time prior to November 28, 2018, Crispino had listed his Toyota RAV-4 on a car sharing app called Getaround. (Complaint ¶ 6.)

6. Prior to and on November 28, 2018, an individual named Mike K. rented Crispino's vehicle through Getaround. (Complaint ¶ 8-9.)

7. At 4:30 PM on November 28, 2018, Mike K. picked up Crispino's RAV-4. (Complaint

---

[1] A true and correct copy of Plaintiff's complaint is attached hereto as Exhibit A.

¶ 9.)

8.      From 10:00 AM to 6:06 PM on November 28, 2018, Plaintiff was at work. (Complaint ¶ 10.)

9.      At 8:12 PM on November 28, 2018, Defendant Officer Jeremiah Forsell met with Mikey in Crispino's Toyota RAV-4, where he exchanged $100 for ten paper stamps. (Complaint ¶¶ 22-23.)

10.     In the meantime, Plaintiff was at a movie theater in Rosemont continuously from 6:40 PM to 8:54 PM on November 28, 2018, watching a movie with a friend. (Complaint ¶¶ 11-13.)

11.     Mikey was wearing a black jacket, jeans, glasses and a hat; his face could not be identified on surveillance footage, although he appeared to have light complexion. (Complaint ¶¶ 22, 27.)

12.     Defendant Forsell made no attempt to apprehend "Mikey"; he instead returned to his squad car, radioed the department to report a positive narcotics transaction, and returned to the police station while Mikey was allowed to drive away unimpeded. Mikey was never stopped, nor was he ever arrested. (Complaint ¶¶ 25-33.)

13.     Back at the department, Defendant Officer Ivanov then conducted a LEADS search on the license plate of the Toyota RAV-4 with Defendant Forsell present. The search returned a picture of Crispino and his address as the registered owner of the vehicle; Forsell told Ivanov that Crispino was not "Mikey." (Complaint ¶¶ 34-36.)

14.     Ivanov searched for Crispino's address in the Accurint database, which returned Plaintiff as a second individual residing at Crispino's address; with Defendant Forsell still present, Ivanov took Plaintiff's identifying information and ran a second LEADS search, retrieving Plaintiff's driver's license photo. (Complaint ¶¶ 37-39, 45.)

15.     Defendants did not ever question Crispino, Plaintiff, or Mike K., nor did they perform any investigation whatsoever regarding the cell phone number Mikey had used in his communications with Forsell throughout the prior month. (Complaint ¶¶ 50-53.)

16.     On November 28, 2018, Defendant Officers Forsell and Rickey signed a sworn criminal complaint charging Plaintiff with possession and delivery of a controlled substance. (Complaint ¶¶ 54-55.)

17.     725 ILCS 5/107A-2(f) mandates that one identifying a suspect in a lineup must not receive information beforehand that could influence their identification. (Complaint ¶ 44.)

18.     On the following day, Forsell was presented with a line-up of six photographs, excluding Crispino but including the photograph that Forsell had already seen from Plaintiff's driver's license during Ivanov's LEADS search the day prior. As a result of Forsell's prior familiarity with Plaintiff's photograph, Forsell identified Plaintiff as "Mikey." (Complaint ¶¶ 40-42, 45-46.)

19.     The paper stamps and enclosing packaging that Forsell had purchased from Mikey were

sent to an Illinois State Police forensics lab for analysis. (Complaint ¶ 47.)

20. On March 11, 2019, the Illinois State Police forensics lab finally returned its testing results to Defendant Forsell: the stamps he had purchased from Mikey on November 28, 2018 contained no controlled substances whatsoever. (Complaint ¶¶ 48-49.)

21. On October 8, 2019, Defendant Ivanov arrested Plaintiff at his home despite the fact that there was clearly no probable cause for possession or delivery of a controlled substance. (Complaint ¶¶ 61-62.)

22. Plaintiff remained in jail until the following day, when he was released on a $25,000.00 I-bond. (Complaint ¶ 63.)

23. On December 6, 2019, the Cook County State's Attorney requested a *nolle prosequit* due to lack of probable cause; the case was then dismissed. (Complaint ¶ 64.)

24. Rather than letting the matter drop, Defendants sought to amend the criminal Complaint and sought to indict Plaintiff with delivery of a look-alike substance. (Complaint ¶ 65.)

25. On December 27, 2019, Defendant Ivanov gave testimony before a Grand Jury which returned a true bill for delivery of a look-alike substance. This caused Plaintiff to re-appear in court to be arraigned on the new charge of delivery of a look-alike substance, whereupon a new bond was set by the court. (Complaint ¶ 66.)

26. On November 13, 2020, the Cook County State's Attorney again requested a *nolle prosequit* due to lack of probable cause and the case was again dismissed. (Complaint ¶ 67.)

27. Plaintiff sued, filing an eight-count Complaint on November 9, 2021 for violation of due process based upon malicious prosecution; conspiracy to deprive constitutional rights; failure to intervene; *Monell* violation; and several state-law claims, including malicious prosecution and intentional infliction of emotional distress.

28. On March 1, 2022, Defendant filed a joint motion to dismiss all claims pursuant to Rule 12(b)(6). On April 8, 2022, Plaintiff responded to the motion.

29. On March 24, 2023, the Court issued an order granting Defendants' motion to dismiss without prejudice, holding that Plaintiff's Section 1983 claim for violation of due process under Count I was in reality a claim under the Fourth Amendment, and holding that such a claim was time-barred; dismissing the derivative counts as therefore time-barred as well; and declining to exercise supplemental jurisdiction over the remaining, state-law counts. The Court ordered that Plaintiff would have until April 14, 2023 to submit an amended complaint, but limited Plaintiff to only amendments pleading a valid deprivation of liberty for purposes of due process by virtue of the interstate travel restriction in Plaintiff's bond conditions.

30. Plaintiff now brings the instant motion pursuant to Rule 59(e).

III. **STANDARD OF REVIEW**

Rule 59(e) of the Federal Rules of Civil Procedure states, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." A Rule 59(e) motion to alter or amend a judgment may be used to ask a district court to reconsider its judgment and correct errors of law, and may be properly used to ask that a judgment be set aside in its entirety. *A.D. Weiss Lithograph Co. v. Illinois Adhesive Prod. Co.,* 705 F.2d 249, 250 (7th Cir. 1983); *Avery v. City of Milwaukee,* 847 F.3d 433, 438 (7th Cir. 2017). Rule 59(e) motions are reviewed under an abuse of discretion standard; but to the extent that the court's conclusion rests upon an interpretation of the law, a court's ruling on such a motion will be reviewed *de novo*. *Am. C.L. Union of Illinois v. Alvarez,* 679 F.3d 583, 589 (7th Cir. 2012).

IV. **ARGUMENT**

1. **This Court's order relies upon bad law in calculating the accrual timing for a Fourth Amendment malicious prosecution claim.**

In its order of March 24, 2023, this Court held that because Plaintiff had not suffered a conviction, Plaintiff's claims of evidence fabrication and malicious prosecution sounded in the Fourth Amendment rather than in due process. Plaintiff does not dispute this conclusion. However, the Court erred in subsequently finding that Plaintiff's Fourth amendment claims accrued as soon as he was released from pretrial detention.

To determine the accrual date for Plaintiff's claim under the Fourth Amendment, the Court relied upon the Seventh Circuit's holding in *Manuel v. City of Joliet, Illinois,* 903 F.3d 667 (7th Cir. 2018)(hereafter, *Manuel II*). This might seem sensible, as the timing for accrual of a Fourth Amendment malicious prosecution claim is the precise question that *Manuel II* sought to answer. However, *Manuel II* is no longer good law, and relying on *Manuel II* to determine the accrual date of a Fourth Amendment malicious prosecution claim under Section 1983 constitutes legal error.

The Seventh Circuit issued its *Manuel II* decision on remand from the US Supreme Court, which had tasked the circuit with deciding between "competing views about what accrual rule should govern a § 1983 suit challenging post-legal-process pretrial detention." *Manuel v. City of Joliet,* Ill., 580 U.S. 357, 370, 137 S. Ct. 911, 921, 197 L. Ed. 2D 312 (2017)(hereafter, simply *Manuel*). In *Manuel*, the Supreme Court indicated that which accrual rule applied would depend in no small part on whether the claim "incorporated a 'favorable termination' element and so pegged the statute of limitations to the dismissal of the criminal case." *Manuel,* 580 U.S. at 371–72. The Court noted that a "great majority" of the Circuits—eight of ten—then found that Fourth Amendment malicious prosecution claims featured a favorable termination requirement, and that each had consequently pegged the accrual date for such claims to the date of the associated criminal case's dismissal. *Id.* at 371. Regardless, the Court declined to rule on the issue without the benefit of the Seventh Circuit's review, and left initial consideration of the matter to the circuit court. *Id.* at 372.

Upon remand, the Seventh Circuit interpreted the Supreme Court's decision in *Manuel* as holding that there existed no such thing as a malicious prosecution claim under the Fourth Amendment. The court wrote: "After *Manuel,* 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention." *Manuel II*, 903 F.3d at 670. Because Section 1983 supported nothing but a raw Fourth Amendment claim for unlawful detention, the Seventh Circuit reasoned, there was no favorable termination requirement and the claim therefore accrued immediately when the detention ceased. *See id*.

This past year, every single part of the reasoning summarized in the paragraph above was catapulted out the proverbial window by the US Supreme Court's ruling in *Thompson v. Clark*. In *Thompson*, the Court not only stated outright that there does exist a claim for malicious prosecution under the Fourth Amendment, but that said claim has a favorable termination requirement. *Thompson v. Clark,* 212 L. Ed. 2d 382, 142 S. Ct. 1332, 1335 (2022)("To maintain that Fourth Amendment claim

[for malicious prosecution] under § 1983, a plaintiff...must demonstrate, among other things, that he obtained a favorable termination of the underlying criminal prosecution").

This completely upends the decision in *Manuel II* because, as the *Manuel II* court itself acknowledged[2], "a claim cannot accrue until the would-be plaintiff is entitled to sue." *Manuel II,* 903 F.3d at 670. *Thompson v. Clark* makes it inescapably clear that a plaintiff is not entitled to sue for malicious prosecution under the Fourth Amendment until the prosecution ends and ends favorably, regardless of when he or she was released from detention. The inevitable result of the above is that based on the principles that *Manuel II* itself sets forth, *Manuel II* is no longer good law.

Notably, although the Seventh Circuit reaffirmed the holding of *Manuel II* in the 2021 case *Smith v. City of Chicago,* 3 F.4th 332, 335–36 (7th Cir. 2021), *Smith* was itself summarily vacated by the US Supreme Court less than a year later "for further consideration in light of *Thompson v. Clark.*" The Supreme Court vacated *Smith* for good reason. If it were true, *arguendo,* that Fourth Amendment malicious prosecution claims still accrued at the moment an accused is released from detention post-*Thompson*, the resulting combination of legal principles would set the stage for a constitutional disaster. Claims would accrue before people could actually sue for them, creating legal "dead zones" where citizens who had been subjected to evidence falsification and malicious prosecution and then released from detention could do nothing even as the statute of limitations began to run—and continued to run, and expired—while waiting for the prosecution to terminate favorably. A prosecutor could simply choose to wait until more than two years after any given release on bond to issue a *nolle prosequit*, ensuring both that (a) the victim could not sue during the two-year period following detention, as the underlying prosecution had not yet terminated favorably; and that (b) the victim could not sue after, as the claim would be deemed to have accrued more than two years prior, time-barring it.

---

2  Ironically, the *Manuel II* court chose as its citation in support of this principle a passage from *Heck v. Humphrey* that clearly and explicitly states, "a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Id.* (*citing Heck v. Humphrey,* 512 U.S. 477, 489, 114 S. Ct. 2364, 2374, 129 L. Ed. 2D 383 (1994)).

This would rip a gaping hole in citizens' right to seek redress under Section 1983, empowering police to terrorize people with false charges based on fraudulent evidence while relying on prosecutors to retroactively grant them *de facto* complete immunity from suit. This would be an appalling result, as the Supreme Court must surely have recognized when it vacated *Smith*. This Honorable Court should not stand for it.

In *Thompson*, the Supreme Court concluded that "a plaintiff need only show that his prosecution ended without a conviction" in order to satisfy the favorable termination requirement for a Fourth Amendment malicious prosecution claim. *Thompson,* 142 S. Ct. at 1335. In this case, Plaintiff was subjected to a course of prosecution based on fabricated evidence until November 13, 2020, when he finally obtained a favorable termination of the underlying criminal prosecution via a second *nolle prosequit*. It was only then that his prosecution ended without a conviction; it was only then that he was entitled to sue; and consequently, it was only then that his claim could have accrued based upon the fundamental legal principles undergirding accrual date rules. *See Manuel II,* 903 F.3d at 670.

This second *nolle prosequit* occurred less than two years prior to the filing of the Complaint; based on the law of Fourth Amendment malicious prosecution as it exists post-*Thompson,* this should render the claims timely. (*See* Complaint ¶¶ 64, 67.) Plaintiff humbly requests that this Court alter the judgment to hold that Count I of the Complaint sets forth a Fourth Amendment malicious prosecution claim; that said claim accrued with the second *nolle prosequit* of November 13, 2020; that Count I is therefore timely; that Plaintiff may therefore maintain all derivative claims (namely, those in Counts II-IV of the Amended Complaint); reinstating all state-law claims (Counts V-VIII); and otherwise altering the judgment so as to deny Defendants' Motion to Dismiss.

## V. **CONCLUSION**

WHEREFORE, Plaintiff Danee Oliva respectfully requests that this Honorable Court enter an

order altering its order of March 24, 2023 to find a Fourth Amendment malicious prosecution accrual date in line with *Thompson*; denying dismissal of Plaintiff's claims under Counts I through VIII based upon that corrected ruling; and granting any other relief that this Court deems necessary and just.

                                                        SEIDMAN MARGULIS AND FAIRMAN, LLP

                   By:     /s/Sean M. Baker
                                Attorney for Plaintiff

Sean M. Baker
SEIDMAN MARGULIS & FAIRMAN, LLP
Two First National Plaza
20 South Clark Street, Suite 700
Chicago, Illinois 60603
(312) 781-1977
sbaker@seidmanlaw.net
ARDC #: 6224417